IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EARL R. HOBBS, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 07 C 6730<br>) |
| v. | ) Judge Bucklo<br>) |
| TCF BANK, | ) Magistrate Judge Brown<br>) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY FURTHER PROCEEDINGS AND TO COMPEL ARBITRATION**

**INTRODUCTION**

Plaintiff Earl R. Hobbs ("Plaintiff") has brought a putative class action against Defendant TCF National Bank (incorrectly named as TCF Bank) (hereinafter, "TCF") based on a cash withdrawal transaction he initiated at a TCF-owned automated teller machine in Chicago, Illinois (the "ATM") in August 2007. In Count I, Plaintiff brings a claim under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* (the "EFTA"), based on the allegation that the ATM did not contain a fee-notice sticker at the time he initiated the cash withdrawal. In Count II, Plaintiff brings a claim under the Expedited Funds Availability Act, 12 U.S.C. § 4001, *et seq.* (the "EFAA"), based on the allegation that the ATM lacked a funds-availability sticker.

As set forth below, Counts I and II are subject to binding arbitration on solely an individual basis. To the best of TCF's knowledge, Plaintiff Earl Hobbs was a TCF customer at the time of the transaction at issue. As a customer of TCF at the time he used the ATM, Plaintiff is obligated, pursuant to the terms of his Account Agreement with TCF, to submit all disputes with TCF to arbitration, and has further waived his right to bring a class action against TCF.

Accordingly, Plaintiff's claims should be stayed and he should be required to arbitrate his individual claims against TCF.

## FACTUAL BACKGROUND

I. **Plaintiff's Account Agreement With TCF**

On April 19, 2003, a customer named Earl Hobbs opened a bank account (the "Account") with TCF by accepting and signing an Account Agreement. (Declaration of Mark W. Gault ("Gault Decl."), attached hereto as Exhibit 1, ¶ 5 and Exh. A thereto.) TCF believes that the Earl Hobbs who became its customer in 2003 is the same Earl Hobbs who is the Plaintiff in this case. TCF's records indicate that on August 22, 2007, an Earl Hobbs who was at that time a TCF customer withdrew $20.00 from his TCF Account using his TCF ATM card at the subject ATM. (Declaration of Traci Mikesell ("Mikesell Decl."), attached hereto as Exhibit 2, ¶ 5.) Based upon information contained in the Complaint, it appears that two minutes after that withdrawal, Plaintiff Earl Hobbs inserted a non-TCF ATM card into the ATM, from which a $20.00 cash withdrawal was made and a $2.00 fee was charged. (*Id.*, ¶ 6.) From these circumstances, the only logical conclusion is that the Earl Hobbs who is now suing TCF based upon his use of the ATM on August 22, 2007 is the same Earl Hobbs who opened a TCF account in 2003 and remained a TCF customer as of August 22, 2007.

The Terms and Conditions that Plaintiff agreed upon when opening his Account in 2003 contained an Arbitration Provision and class action waiver. (Gault Decl., ¶ 6 and Exh. B thereto.) Plaintiff initialed the Account Agreement to reflect that he understood and agreed to the Arbitration Provision included therein. (*Id.*, Exh. A at p.2.) The Account Agreement also expressly provides that "TCF MAY CHANGE OR MAKE ADDITIONS TO YOUR ACCOUNT CONTRACT FROM TIME TO TIME." (*Id.*, Exh. B at p.2.) (all capitals in original).

The Terms and Conditions were amended in January 2005 to include a revised Arbitration Provision (the "Revised Arbitration Provision"). (*Id.*, ¶ 8 and Exh. C thereto.) Plaintiff received a notice containing the Revised Arbitration Provision with his January 2005 account statement. (*Id.*, ¶ 9.) That notice expressly included a provision allowing Plaintiff to reject the Revised Arbitration Provision in its entirety by notifying TCF in writing. (*Id.*, Exh. C at p.1.) Plaintiff did not do so. (*Id.,* ¶ 10.) Accordingly, the Arbitration Provision that was in effect at the time of the ATM transaction at issue in this action (August 2007) is the Revised Arbitration Provision. *See Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 118-19, 739 N.E.2d 886, 892-93 (1st Dist. 2003) (when original agreement provided that it could be amended, court enforced terms of revised arbitration provision sent to customer by mail) (citing cases).

The Revised Arbitration Provision provides in pertinent part that:

> Read this Arbitration Provision Carefully.  It limits certain rights, including Your right to pursue a claim in court, Your right to a judge or jury trial, Your right to pursue a claim as a class action, Your discovery rights, and Your rights of appeal.
>
> Your right to reject:  If You do not want this Arbitration Provision to apply, You may reject it, by mailing a written rejection notice which describes this Arbitration Provision and tells TCF that You are rejecting this Arbitration Provision to: [TCF]….If you do not reject this Arbitration Provision, You will <u>not</u> be able to reject it at a later date . If You reject this Arbitration Provision, that does not affect any other provision of Your Account Contract or the status of Your Account.  If You do not reject this Arbitration Provision, it will be effective as of March 15, 2005.

(*Id.*, Exh. C at pp.1-2 (emphasis in original).)

The Revised Arbitration Provision further specifies the procedures applicable to initiating a Claim:

> In the event of a dispute involving You or TCF, either You or TCF may elect to resolve the Claim by binding arbitration, provided that the electing party notifies the other party in writing of the demand for arbitration.  Such notice may consist of a pleading filed in court in which the electing party demands arbitration.

> Arbitration is a method of resolving disputes in front of one or more neutral persons (called "arbitrators"), instead of having a trial in court or in front of a judge or jury. This Arbitration provision governs when and how any disputes between You and TCF will be arbitrated – instead of decided in court – even if one party initially chooses to bring the case in court.

(*Id.*, Exh. C at p.2.)

In addition, both TCF and Plaintiff expressly waived the right to arbitration of any claim as a class action:

> **If arbitration is chosen, You and TCF waive the right to have any Claim arbitrated as a class action or a private attorney general action. The arbitration will be limited to Your or TCF's individual Claims only. Notwithstanding any other provision in this Arbitration provision, if You or TCF elects to arbitrate a Claim, neither You nor TCF will have the right to: (1) participate in a class action in a court or in arbitration either as a class representative or a class member; (2) act as a private attorney general in court or in arbitration; or (3) join or consolidate Claims with claims of any other person. The validity of this Section 11 shall be determined exclusively by a court and not an arbitrator.**

(*Id.*, Exh. C at p.7 (bold in original).)

## II. Plaintiff's Dispute with TCF

Plaintiff alleges that on August 22, 2007, he used a TCF-owned ATM located at 2940 North Ashland Avenue in Chicago, Illinois to withdraw funds and that he was charged a $2.00 fee to do so. (Cmpl. ¶¶ 11-12.) Plaintiff contends that at the time he initiated the transaction at the ATM, it did not contain a posted notice disclosing that users would be charged any fee for using the ATM, in violation of the EFTA and its implementing regulations, 12 C.F.R. § 205.1, *et seq.* ("Regulation E"). (Cmpl. ¶¶ 5-7, 12-13.) Plaintiff also alleges that the ATM did not contain a posted notice advising that funds deposited at the ATM may not be available for immediate withdrawal, in violation of the EFAA and its implementing regulations, 12 C.F.R. § 229.1, *et seq.* ("Regulation CC"). (Cmpl. ¶¶ 9-10, 14.)

Based on these allegations, Plaintiff purports to represent a class of individuals who (a) were charged a transaction fee by TCF for their use of the ATM when there was no fee amount posted on the outside of the ATM ("Class A"), and (b) used the ATM and were not notified by any signage that funds deposited into the ATM may not be available for immediate withdrawal ("Class B").  (Cmpl. ¶¶ 16, 30.)

**ARGUMENT**

I. **The Revised Arbitration Provision Should Be Enforced According to Its Terms.**

   A. **The Federal Arbitration Act Governs.**

The Revised Arbitration Provision is plainly enforceable and covers Plaintiff's current dispute with TCF.  Section 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 2, makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  The FAA creates a body of federal substantive law of arbitrability which is applicable to arbitration agreements in contracts that involve interstate commerce.  *Perry v. Thomas*, 482 U.S. 483, 489 (1987).  Federal law strongly favors the arbitration of disputes, and requires that courts rigorously enforce arbitration agreements.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The United States Supreme Court has emphasized that arbitration is favored in consumer disputes: "We agree that Congress, when enacting [the FAA], had the needs of consumers, as well as others, in mind …. [T]he Act, by avoiding 'the delay and expense of litigation,' will appeal 'to big business and little business alike, corporate interests [and] individuals.'  Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) (citations omitted).

The FAA applies in this case both by operation of law and agreement of the parties. The FAA covers written arbitration provisions contained in a "contract evidencing transaction involving commerce," 9 U.S.C. § 2, and defines "commerce" as "commerce among the several States." *Id*. § 1. "[T]he word 'involving' … signals an intent to exercise Congress' commerce clause power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction … turn[s] out, *in fact*, to have involved interstate commerce," even if the parties did not contemplate an interstate commerce connection. *Allied-Bruce*, 513 U.S. at 280 (emphasis in original). The term "commerce" is to be broadly construed. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401-02 (1967). *See also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[W]e have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power").

Here, Plaintiff's allegations regarding his use of an ATM involved interstate commerce. *See, e.g., United States v. Baker*, 82 F.3d 273, 275-76 (8th Cir. 1996) (ATM network was an instrumentality of interstate commerce, even if used intrastate), *cert. denied*, 519 U.S. 1020 (1996); *United States v. Wadena*, 152 F.3d 831, 853 (8th Cir. 1998) (transactions with an FDIC-insured institution establish an interstate commerce nexus under the Commerce Clause even if the transactions are wholly intrastate), *cert. denied*, 526 U.S. 1050 (1999). Moreover, the Revised Arbitration Provision states that it "involves interstate commerce and will be governed by the Federal Arbitration Act…." (Gault Decl., Exh. C at p.6.) This constitutes additional compelling evidence that the FAA's interstate commerce requirement has been satisfied. *Staples v. The Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *Thomas O'Connor & Co. v. Insurance Co. of N.A.*, 697 F. Supp. 563, 566 (D. Mass. 1988); *see also Rodriguez v. American Techs., Inc.*, 39 Cal. Rptr. 3d 437, 445 (Cal. Ct. App. 2006) (if the parties expressly state that the

FAA applies, then California state arbitration law is preempted); *Pest Mgmt., Inc. v. Langer*, 96 Ark. App. 220 (2006) (the parties' choice of the FAA to govern their arbitration agreement preempted the Arkansas Arbitration Act), *aff'd*, 2006 WL 538178 (2007). Accordingly, the FAA governs the applicability and enforcement of the Revised Arbitration Provision.

> B. **The Revised Arbitration Provision is Enforceable under the FAA.**

Under the FAA, the federal courts act as gatekeepers, making an initial determination as to whether the parties have entered into a valid agreement to arbitrate their dispute. *See AT&T Techs. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649-50 (1986); *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 558-59 (7th Cir. 2003) ("having found the arbitration agreement enforceable[, a court] must give full force to its terms"). Courts have long interpreted the FAA with a "healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (*quoting Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). An arbitration provision should be construed in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998).

Here, the existence of a valid arbitration agreement should not be in dispute. Indeed, Judge Pallmeyer recently held the very same TCF arbitration provision, including the same class action waiver, to be enforceable, rejecting plaintiff's argument that the clause was procedurally or substantive unconscionable under the standards articulated by the Illinois Supreme Court in *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 857 N.E.2d 250 (2006). As Judge Pallmeyer noted:

> The language in the Terms and Conditions document was not Plaintiff's only notice of the arbitration agreement. When she signed the Account Agreement, Plaintiff separately initialed the paragraph, written in all capitals, stating that she understood and agreed to the arbitration provision in the account contract. The arbitration provision in the account contract is written in plain English, and in standard font size; the portion relating to the waiver of class action claims is in bold face. Nor is the arbitration clause obviously a product of a disparity in bargaining power: Plaintiff had the absolute right to reject the arbitration provision without affecting her account contract or the status of her account.
>
> [T]he Account Agreement itself made mention of the arbitration provision in plain English and in bold print. Plaintiff separately initialed that portion of the agreement, signifying that she understood and agreed to it. Most importantly, Plaintiff had the unfettered right to opt out of the arbitration provision. These circumstances defeat a claim of procedural unconscionability.

See *Pivoris v. TCF Financial Corp.*, No. 07 C 2673, 2007 WL 4355040, at *4 (N.D. Ill. Dec. 7, 2007), a copy of which is attached hereto as Exhibit 3.

The result in *Pivoris* is not surprising, as the Seventh Circuit and other courts in this District have consistently and repeatedly upheld and enforced similar class action waivers in consumer arbitration agreements. *See, e.g.*, *Carbajal v. H&R Block Tax Services, Inc.*, 372 F.3d 903, 906 (7th Cir. 2004) (enforcing arbitration clause containing a class action waiver); *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) ("[t]he Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing 'class action arbitration,' so we are therefore 'obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis'") (citations omitted); *Pivoris*, 2007 WL 4355040, at *6 (citing additional cases).

In the present case, there is no suggestion that Plaintiff did not consent to the terms of the Revised Arbitration Provision. On the contrary, in 2003 Plaintiff signed and initialed the Account Agreement to manifest his agreement to the original arbitration clause, and in 2005 Plaintiff did not opt out of the applicability of the Revised Arbitration Provision, as was

his right. The Revised Arbitration Clause at issue here is substantially identical in every respect to the TCF arbitration clause and class action waiver at issue in *Pivoris*, and should be similarly enforced according to its terms.

**II.     The Instant Dispute Falls Within the Scope of the Arbitration Clause; Plaintiff Must Therefore Arbitrate His Claims Against TCF on Solely an Individual Basis.**

The dispute between Plaintiff and TCF arises out of a transaction that Plaintiff (at the time, a TCF customer) initiated at a TCF-owned ATM. Moreover, Plaintiff's claims fall within the broad definition of a "Claim" as that term is defined in the Revised Arbitration Provision:

> A Claim (which is subject to resolution by arbitration) includes *any claim, dispute, or controversy between You and TCF that arises from or relates to*:
>
> a)     Your *Account Contract with TCF*, and any other documents executed by You or provided to You in connection with Your Account;
>
> . . . .
>
> e)     the validity, scope, enforceability, arbitrability, or interpretation of Your Account Contract with TCF;
>
> . . . .
>
> g)     *future dealings between you and TCF* . . . .

(Gault Decl., Exh. C at p.3 (emphasis added).)

The Seventh Circuit has held that arbitration provisions incorporating the "arising from or relating to" language are extremely broad, capable of an extensive reach, and create a presumption of arbitrability. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (citing *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1999)); s*ee also J.J. Ryan & Sons*; *Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, No. 01 C 4312, 2001 WL 1568817 (N.D. Ill. Dec. 10, 2001).

Given this case law and the terms of the Revised Arbitration Provision, both of Plaintiff's claims are subject to arbitration, on solely an individual basis. As to Plaintiff's EFTA claim in Count I, Plaintiff voluntarily initiated a transaction with TCF when he withdrew funds from a TCF ATM. His actions in this regard were a "future dealing" with TCF, and are therefore subject to arbitration under subsection (g) of the definition of a Claim. (*Id.*, Exh. C at p.3.)

In addition, the cash withdrawal and associated fee relate to Plaintiff's "Account Contract", and any disputes relating thereto are therefore subject to arbitration pursuant to subsection (a) of the definition of Claim. As stated in the Terms and Conditions, the Account Contract consists of, *inter alia*, TCF's Deposit Account Services and Prices Schedule ("Services and Prices Schedule").[1] (*See* Gault Decl., Exh. B at p.2.) The Services and Prices Schedule (*id.*, Exh. E) sets forth the prices for additional services that TCF offers to its customers. Specifically, under the section pertaining to ATM transactions, the Services and Prices Schedule states that "TCF account holders will not be charged an access fee at [TCF ATMs]"; it further states, however, that "TCF charges a fee *when a customer uses a TCF ATM to access a non-TCF account.*" (*Id.*, Exh. E at p.2 note b (emphasis added).)

Plaintiff's EFTA claim in Count I is predicated on the allegation that he withdrew funds from a TCF ATM and that he was charged a fee for doing so. The Services and Prices Schedule, which was provided to Plaintiff and comprises part of his Account Contract with TCF, however, specifically addresses the circumstances under which TCF can charge its customers for the use of a TCF ATM. (*See* Gault Decl., ¶ 11 and Exh. E thereto.) Thus, Plaintiff's EFTA

---

[1] By signing the Account Agreement, Plaintiff affirmed that he received, *inter alia*, a copy of the Account Agreement, the Terms and Conditions, the Services and Prices Schedule, and TCF's Funds Availability Schedule. (*See* Gault Decl., Exh. A at p.1.) Plaintiff was also required to, and did, sign the box in the Account Agreement stating that he "agree[d] to all the terms of the Account Contract", which specifically includes each of those documents. (*See id.*, Exh. A at p.2.)

-10-

claim in Count I "relates" to his Account Contract with TCF, and squarely falls within the definition of a Claim under subsection (a) of the Revised Arbitration Provision.

Plaintiff's EFAA claim in Count II must also be arbitrated because his claim could only arise if he was using the ATM to make a deposit to his TCF account. ATM owners only owe a duty to disclose the availability of funds to their own customers who are depositing funds with the bank that owns the ATM. *See* 12 C.F.R. § 229.18(c) ("A *depositary bank* shall post or provide a notice at each ATM location that funds deposited in the ATM may not be available for immediate withdrawal.") (emphasis added). Thus, a bank-ATM owner is only required to give its *own* account holders, who are depositing funds with that bank, notice of when the bank-ATM owner will make those deposited funds available for withdrawal. This makes perfect sense – TCF cannot possibly know the availability of funds policies for other banks. In fact, TCF ATMs cannot even accept deposits for non-TCF accounts. (Mikesell Decl., ¶ 7.) Thus, the only conceivable duty that TCF could have owed Plaintiff in connection with an availability of funds sticker would be to Plaintiff *in his capacity as a TCF account holder depositing funds to his TCF account*, which is squarely subject to arbitration under any interpretation of the express terms of the Revised Arbitration Provision.

Accordingly, Plaintiff should be compelled to submit all of his disputes with TCF to binding arbitration on an individual basis, in accordance with the express terms of the Revised Arbitration Provision and the class action waiver contained therein. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989) (the FAA "ensur[es] that private agreements to arbitrate are enforced according to their terms"). *See also AT&T Techs.*, 475 U.S. at 649-50; *Moses H. Cone*, 460 U.S. at 34-35; *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 558-59 (7th Cir. 2003) ("[H]aving found the arbitration agreement enforceable[, a court] must give full force to its terms.").

**CONCLUSION**

The present dispute between Plaintiff and TCF falls squarely within the scope of an enforceable arbitration provision and class action waiver. Accordingly, the Court should stay further proceedings and compel Plaintiff to submit the claims raised in Counts I and II of his Complaint to arbitration on solely an individual basis.

Dated: February 6, 2008

                                        Respectfully submitted,

                                        TCF NATIONAL BANK

                                        By  /s/ David R. Lidow
                                               One of Its Attorneys

Fredric R. Klein
Steven A. Levy
David R. Lidow
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000