# EXHIBIT 3

Westlaw.

Slip Copy   Page 1
Slip Copy, 2007 WL 4355040 (N.D.Ill.)
**(Cite as: Slip Copy)**

Pivoris v. TCF Financial Corp.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Marilyn PIVORIS, on behalf of herself and all others similarly situated, Plaintiff,
v.
TCF FINANCIAL CORPORATION d/b/a TCF Bank, a Delaware corporation, Defendant.
**No. 07 C 2673.**

Dec. 7, 2007.

Larry Daniel Drury, Larry D. Drury, Ltd., Ilan J. Chorowsky, Chorowsky Law Offices, Chicago, IL, for Plaintiff.
Jonathan Hale Claydon, Frederic R. Klein, Roger Andrew Lewis, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

REBECCA R. PALLMEYER, District Judge.

**\*1** Plaintiff Marilyn J. Pivoris ("Pivoris"), a client of Defendant TCF Bank ("TCF"), filed a five-count complaint in the Circuit Court of Cook County, Illinois, on behalf of herself and a class of TCF account holders. Pivoris's complaint challenges the propriety of TCF's practices for crediting deposits and the manner in which TCF discloses the schedule for such credits. Pivoris alleges that TCF's practices violate the Illinois Consumer Fraud and Deceptive Business Practices Act, are unconscionable, and constitute conversion and unjust enrichment. TCF removed the action to this court under the provisions of the Class Action Fairness Act, 28 U.S.C. § 1453, and as preempted by federal law, and now moves to stay the proceedings and compel arbitration pursuant to the arbitration clause in the account agreement between Pivoris and TCF. For the reasons set forth here, the motion is granted.

### BACKGROUND

On July 27, 2006, Pivoris, a resident of Illinois, opened a TCF Plus E Checking Account and a Goal Savings Account (the "Accounts") in her name at a TCF Bank in Chicago, Illinois. (Compl. ¶¶ 2, 6; Account Agreement, Ex. 1A to Defendant's Motion to Stay ("Def.'s Mot.")) In connection with opening the Accounts with TCF, Pivoris signed an Account Agreement which provided:

DISPUTES UNDER THIS ACCOUNT MAY BE SUBJECT TO BINDING ARBITRATION IF EITHER YOU OR TCF SO ELECTS. IF TCF ELECTS TO ARBITRATE ANY SUCH DISPUTE, YOU WILL HAVE NO RIGHT TO A JURY TRIAL FOR THAT DISPUTE, AND VICE VERSA, AND CERTAIN OTHER CONSEQUENCES APPLY. SEE "ARBITRATION OF DISPUTES" IN THE ACCOUNT CONTRACT.

(Account Agreement at 2, Ex. 1A to Def.'s Mot.) Pivoris both signed the Account Agreement and separately initialed the above paragraph, acknowledging that she understood and agreed with its terms. The Terms and Conditions for Checking and Savings Accounts are incorporated in the Account Agreement. (Terms and Conditions for Checking and Savings Accounts, at 4, Ex. 1 B to Defendant's Motion [hereinafter, "Terms and Conditions"].) Included among the provisions set forth there is a section labeled "Arbitration of Disputes." (*Id.* at 15.)The document cautioned Pivoris to "[r]ead this Arbitration provision carefully," and warned that it limited her rights to a trial, to pursue a class action, to obtain discovery, and to take an appeal. (*Id.*) The Terms and Conditions also explained that Pivoris was entitled to reject the arbitration clause by "mailing a written rejection notice" within thirty days. (*Id.* at 15-16.)Should she choose to reject the arbitration provision, the Terms and Conditions made clear that this choice would "not affect any other provision of your account Contract or the status of Your Account."(*Id.* at 16.)

The Arbitration clause provided that, in the event of a dispute between Pivoris and TCF, either TCF or Pivoris would be entitled to "elect to resolve the Claim by binding arbitration" by providing written notice to the other party. (*Id.*) And the document explained that arbitration

**\*2** is a method of resolving disputes in front of one or more neutral persons (called "arbitrators"), instead of having a trial in court or in front of a judge or jury. This Arbitration provision governs when and how any disputes between You and TCF will be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 4355040 (N.D.Ill.)  
**(Cite as: Slip Copy)**

Page 2

arbitrated-instead of decided in court-even if one party initially chooses to bring the case in court ....

(*Id.*)The Terms and Conditions described the claims subject to arbitration broadly as including "any claim, dispute, or controversy between You and TCF that arises from or relates to" Plaintiff's account contract, or documents connected to the account; the arbitration clause itself; the "validity, scope, enforceability, arbitrability, or interpretation" of her account agreement; and any prior or future dealings between Pivoris and TCF. (*Id.* at 17.)Contract, tort, statutory, and fraud claims were included, as were claims under "any other theory." (*Id.*) The only matters carved out from the scope of the definition of "claim" were "the use by [Pivoris] or TCF of any self-help or non-judicial remedies," including "non-judicial remedies to protect TCF's rights, right of set-off, or any individual judicial action by a party that is limited to preventing the other party from using a self-help or non-judicial remedy and that does not involve a request for damages or monetary relief of any kind."(*Id.* at 18.)Also carved out from the scope of arbitration were any claims brought in small claims court or in bankruptcy, and any dispute concerning Pivoris's waiver of her right to bring a class action. (*Id.*)

The Terms and Conditions assured Pivoris that any arbitration hearing would take place "at a location that is reasonably convenient" to her, and that TCF would pay fees charged by the arbitrator up to $2,500 and would consider any reasonable request for reimbursement of additional fees the arbitrator might charge. (*Id.* at 19-20.)TCF would "under no circumstances" seek to recover amounts TCF itself paid for the arbitration services, or its own attorneys fees. (*Id.* at 20.The agreement anticipated that the arbitrators would "apply the substantive law that is applicable" to any claim and would be authorized to "award all remedies permitted by the substantive law that would apply if the action were pending in court."(*Id.*)

Finally, the Terms and Conditions make clear that, if applicable, the arbitration clause would preclude any class action:

**If arbitration is chosen, You and TCF waive the right to have any Claim arbitrated as a class action or a private attorney general action. The arbitration will be limited to Your or TCF's individual Claims only. Notwithstanding any other provision in this Arbitration provision, if You or TCF elects to arbitrate a Claim, neither You nor TCF will have the right to: (1) participate in a class action in a court or in arbitration either as a class representative or a class member; (2) act as a private attorney general in court or in arbitration; or (3) join or consolidate Claims with claims of any other person. The validity and effect of this Section 11 shall be determined exclusively by a court and not an arbitrator.**

\*3 (*Id.* at 21) (boldface in original).

*Plaintiff's Claims*

The allegations of Plaintiff's complaint, presumed true for purposes of this motion, establish the following: On or about October 11, 2006, Plaintiff deposited a check for $30,767.43 in her checking account; the drawee of the check transferred the funds to TCF on October 13, 2006. (Compl.¶ 7.) Although the funds actually cleared on October 13, 2006, Plaintiff alleges, TCF placed an eleven-day "hold" on her funds. TCF sent her a letter entitled "Notice of Hold Delaying Availability of Funds," informing her that because the check was in an amount greater than $5,000, $25,767.43 of her deposit would be held until October 26, 2006. (*Id.* ¶¶ 8-9.)As noted, TCF removed Pivoris's five-count complaint to federal court, and now seeks an order staying further proceedings and compelling Pivoris to arbitrate the dispute on an individual basis in accordance with the Account Agreement.

*DISCUSSION*

**I.** *Enforceability of Arbitration Provision*

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts. *Jain v. de Mere,* 51 F.3d 686, 688 (7th Cir.1995). Under the FAA, arbitration clauses are valid and enforceable agreements to be viewed with favor as a matter of federal and public policy. 9 U.S.C. § 2; *see Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,* 1 F.3d 639, 641 (7th Cir.1993) ("it is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration").*See also Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (noting that Congress had "the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

needs of consumers ... in mind" when passing the FAA, and observing that "arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation."). The statute therefore directs federal courts to stay legal proceedings when a particular dispute is found to be subject to arbitration under a contract or agreement. 9 U.S.C. § 3. In keeping with the spirit of the FAA, "[a]n order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause [in a contract or agreement] is not susceptible of an interpretation that covers the asserted dispute."*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see also AT & T Techs., Inc. v. Communic'ns Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Despite this strong presumption in favor of their validity, arbitration agreements ultimately remain a matter of the parties' intent. Nothing in the FAA limits the parties' freedom to design arbitration clauses to their own tastes and needs. An arbitration clause thus carries its own substantive and temporal terms and limitations. *See, e.g., Bradford-Scott Data Corp. v. Physician Computer Network, Inc.,* 136 F.3d 1156, 1157-58 (7th Cir.1998) (arbitration clause limited to disputes concerning payment of license or support fees); *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.,* 858 F.2d 825, 831 (2nd Cir.1988) (arbitration clause limited to tax obligations arising from indemnification under one specific paragraph of contract). In other words, the parties may properly agree to arbitrate some claims but not others. *See, e.g., Kroll v. Doctor's Assocs., Inc.,* 3 F.3d 1167, 1171 (7th Cir.1993) (fact that parties agreed to arbitrate all disputes relating to franchise agreements but not disputes relating to real estate agreements does not undermine the mutuality of the franchise agreement's arbitration provision); *Int'l Bhd. of Teamsters, Local Union No. 371 v. Logistics Support Group,* 999 F.2d 227, 231 (7th Cir.1993) (duty to arbitrate remains one prescribed by contract and matters subject to arbitration should be specifically stated). No court may force a party to arbitrate a claim it has not previously agreed to arbitrate. *AT & T,* 475 U.S. at 648. Nor may a court expand the application of an arbitration clause beyond its intended scope. Instead, a court must resolve any dispute as to the arbitrability of a claim by examining whether it is of the type that the parties agreed to arbitrate.*Id.* at 649;*see also International Bhd.,* 999 F.2d at 229.

*4 In the absence of clear evidence to the contrary, the issue of whether the parties have a valid arbitration agreement at all is resolved by the court. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (citations omitted.) The FAA makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. To determine the validity of an arbitration provision, "a federal court should look to the state law that ordinarily governs the formation of contracts."*Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366-67 (7th Cir.1999.) In this case, the court will apply Illinois contract law because all the events relevant to this dispute arose in Illinois.

**A. Procedural Unconscionability**

Plaintiff argues that the arbitration provision is both procedurally unconscionable and substantively unconscionable. Under Illinois law, "[p]rocedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it ...." *Kinkel v. Cingular Wireless LLC,* 223 Ill.2d 1, 22, 306 Ill.Dec. 157, 857 N.E.2d 250, 264 (2006), quoting *Razor v. Hyundai Motor Am.,* 222 Ill.2d 75, 100, 305 Ill.Dec. 15, 854 N.E.2d 607, 622 (2006). Furthermore, the analysis takes into account the disparity in bargaining power between the drafter of the contract and the party arguing that it is unconscionable. *Id.* In *Kinkel,* the court delineated a number of factors to consider when assessing procedural unconscionability, including "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.*

Pivoris argues that the arbitration provision at issue here is procedurally unconscionable. She characterizes the arbitration clause as "buried on page 15" of the Terms and Conditions (Plaintiff's Response to Defendant's Motion to Stay, at 4 [hereinafter, "Pl.'s Resp."] ), but does not otherwise develop the argument. The court notes that the language in the Terms and Conditions document was not Plaintiff's only notice of the arbitration agreement. When she signed the Account Agreement,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                 Page 4
Slip Copy, 2007 WL 4355040 (N.D.Ill.)
**(Cite as: Slip Copy)**

Plaintiff separately initialed the paragraph, written in all capitals, stating that she understood and agreed to the arbitration provision in the account contract. (Account Agreement at 2.) The arbitration provision in the account contract is written in plain English, and in standard font size; the portion relating to the waiver of class action claims is in bold face. Nor is the arbitration clause obviously a product of a disparity in bargaining power: Plaintiff had the absolute right to reject the arbitration provision without affecting her account contract or the status of her account.

In this case, the Account Agreement itself made mention of the arbitration provision in plain English and in bold print. Plaintiff separately initialed that portion of the agreement, signifying that she understood and agreed to it. Most importantly, Plaintiff had the unfettered right to opt out of the arbitration provision. These circumstances defeat a claim of procedural unconscionability.

**B. Substantive Unconscionability**

**\*5** In addition to her procedural unconscionability challenge, Plaintiff contends that the arbitration provision is substantively unconscionable because it bars recovery of attorneys' fees and costs and because it bars class actions. (Pl.'s Resp. at 7, 9-10.) The *Kinkel* court adopted this definition of substantive unconscionability:

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain and significant cost-price disparity."

*Kinkel,* 223 Ill.2d at 28, 306 Ill.Dec. 157, 857 N.E.2d at 267, quoting *Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995). The court turns, first, to Plaintiff's argument that the arbitration provision is substantively unconscionable because it bars recovery of attorney's fees and costs. Without reaching the question of whether a provision barring recovery of fees would render arbitration unconscionable, the court observes that the agreement here does not in fact contain such a provision. Instead, it appears to contemplate fee-shifting where such a remedy is available under the substantive law governing the dispute subject to arbitration. Thus, the Terms and Conditions direct that "[e]ach party must pay for its own attorneys, experts, and witnesses, regardless of who wins the arbitration, except where applicable law and/or the Administrator's rules *provide otherwise.*"(Terms and Conditions, at 20 (emphasis supplied).) Additionally, the arbitration provision provides that "TCF will under all circumstances pay any fees or expenses TCF is required to pay by law" and that "the arbitrator(s) is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court."(*Id.*) As the court reads this language, Plaintiff is afforded the same rights to fee-shifting that she would have if her claim were pending in court. *See also Carbajal v. H & R Block Tax Services, Inc.,* 372 F.3d 903, 904-906 (7th Cir.2004) (enforcing arbitration clause that required parties to bear their own costs; it is for the arbitrator to decide the validity of that provision and whether it is overridden by substantive law that permits a prevailing litigant to recover attorneys' fees).

Plaintiff contends that the costs of arbitration would be excessive and asserts, in a footnote, that the costs of arbitration will likely dramatically exceed the costs of pursuing the claims in court. (Pl.'s Resp. at 7 n. 1.) Again, the court is not persuaded. The Terms and Conditions require TCF to pay all filing, hearing, and/or other fees for arbitration, up to $2,500, after Plaintiff has paid a fee equivalent to court filing fee; in the circumstances of this case, where Plaintiff has already paid a court filing fee, the agreement provides that she "will not be required to pay that amount again."(Terms and Conditions, at 20.) Plaintiff has not explained the basis for her conclusion that the cost of arbitration would exceed the costs she would incur in litigation, or even that the arbitration expense would exceed the $2,500 that TCF is committed to pay. As the Supreme Court explained in *Green Tree Fin. Corp.-Alabama v. Randolph,* where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). In this case, Plaintiff has not met her burden of showing that the costs she would incur in arbitration are prohibitive.

**\*6** Plaintiff next argues that the arbitration provision is substantively unconscionable because it bars class actions. (Pl.'s Resp. at 9-10.) In some circumstances, courts have found that a class action

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

waiver renders an arbitration clause unconscionable; a number of other cases have upheld such clauses. *See generally* William M. Howard, *Validity of Arbitration Clause Precluding Class Actions,* 13 A.L.R. 6th 145 (2007) Thomson/West). In *Kinkel,* the Illinois Supreme Court reviewed cases from a number of other jurisdictions and concluded that "a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner."223 Ill.2d at 41, 306 Ill.Dec. 157, 857 N.E.2d at 274. Our own Court of Appeals had little difficulty with an arbitration clause that precluded class actions: In *Livingston v. Associates Finance, Inc.,* the district court had refused to enforce an arbitration agreement in a case alleging violations of the Truth in Lending Act. 339 F.3d 553, 556 (7th Cir.2003). The Seventh Circuit reversed, concluding that plaintiffs had not met their burden, under *Green Tree,* of establishing that arbitration would be prohibitively expensive. *Id.* at 557.Without pausing to address the question whether a prohibition of class actions rendered the agreement unconscionable, the court concluded, that, having found the arbitration agreement to be enforceable, the court must give "full force to its terms," including the preclusion of class claims: "The Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing class action arbitration, so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis."*Id.* at 559 (internal quotation marks omitted).*See also Boomer v. AT & T Corp.,* 309 F.3d 404, 419 n. 6 (7th Cir.2002) (as arbitration clause is enforceable, validity of a clause prohibiting class actions is to be decided by the arbitrator in the first instance); *Arnold v. Goldstar Fin. Sys., Inc.,* No. 01 C 7694, 2002 WL 1941546, *9 (N.D.Ill. Aug.22, 2002) (where statute underlying plaintiff's claim did not create a substantive right to bring a class action, waiver of such a right in arbitration agreement is enforceable); *Zawikowski v. Beneficial Nat. Bank,* No. 98 C 2178, 1999 WL 35304, at *2 (N.D.Ill. Jan.11, 1999) ("Nothing prevents the Plaintiffs from contracting away their right to a class action.")

In this court's view, the class action waiver at issue here passes the test outlined in *Kunkel:* As explained earlier, Plaintiff Pivoris had a meaningful opportunity to reject the arbitration provision without repercussions. Further, the arbitration clause does not appear to impose limitations that would preclude her from obtaining a remedy for her claims against TCF in a cost-effective manner. The court concludes Plaintiff has not met her burden of establishing that the arbitration clause at issue here is unconscionable.

**II.** *Claims Subject to Arbitration*

**\*7** Having concluded that the arbitration provision is enforceable, the court turns to Plaintiff's argument that the claims she asserts here are not subject to arbitration because they involve "self-help" remedies and "provisional" remedies.

As explained earlier, the FAA requires that, when presented with an application for a stay of proceedings pending arbitration, the court must grant the requested stay and compel arbitration if there is: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682 (7th Cir.2005). If these conditions are met, arbitration is mandatory "save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2.

Plaintiff urges that her claims fall outside of the arbitration provision because they challenge TCF's use of self-help remedies. The arbitration provision states:

Notwithstanding the broad definition of a "Claim" set forth above, a "Claim" shall not include the use by you or TCF of any self-help or non-judicial remedy, including but not limited to non-judicial remedies to protect TCF's rights, right of set-off, or any individual judicial action by a party that is limited to preventing the other party from using a self-help or non-judicial remedy and that does not involve a request for damages or monetary relief of any kind.

(Terms and Conditions, at 18.) In Plaintiff's view, when it placed a hold on her funds, TCF was engaged in the use of a "self-help" remedy. TCF contends that the placement of a hold on Plaintiff's account was not a self-help remedy at all, but was instead action specifically authorized by the Account Agreement, which provides that the availability of "Funds You deposit by check may be delayed for a longer period [where the account holder] ... deposit[s]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

checks totaling more than $5,000 on any day."(Terms and Conditions at 41.) "Self-help," TCF contends, is in contrast, "use of a non-judicial 'remedy' *triggered by the other party's breach or default.*"(Defendant's Reply Memorandum of Law in Support of Motion to Stay, at 14 (emphasis original).) TCF has not charged Plaintiff with any breach or default relating to her deposit, and, according to TCF, the "hold" being challenged in this case is not a remedy at all, but nothing more than "ordinary performance of [TCF's] contract rights."(*Id.*)

The court declines to endorse TCF's narrow construction of the term "self-help." That term is not defined in the parties' agreement, and can be understood as "the act of redressing *or preventing* a wrong by one's own actions rather than through legal proceedings."Merriam-Webster's Dictionary of Law, http://dictionary.reference.com/browse/self-help (last visited Dec. 7, 2007) (emphasis supplied). As so understood, "self-help" might well include TCF's imposition of a lengthy hold on Plaintiff's deposit, to prevent the harm that could result from a bounced check. Nor is the court inclined to draw any conclusion about whether the lengthy hold of which Plaintiff complains here is in fact authorized by the account agreement-a matter better left, in the first instance, for the arbitrator. Even if TCF's conduct does constitute self-help, the court concludes that claims arising from that conduct are not excluded from the scope of the arbitration agreement, which excludes such a claim only if it "does not involve a request for damages or monetary relief of any kind."Plaintiff Pivoris contends TCF has been unjustly enriched by its practices and seeks an award of punitive damages, attorneys' fees and costs, and "such other relief" as the court deems appropriate-relief that Plaintiff unquestionably asserts will include an award of damages if she proves her claim(s). Her claims are not excluded from arbitration for this reason.

**\*8** Finally, Plaintiff urges that her claims fall into another exception to the reach of the arbitration provision, the exception for "provisional claims." The specific language she invokes provides that

"Claim" does not include any of the following claims or proceedings: (a) any individual action brought by You in a small claims court or Your state's equivalent court, unless such action is transferred, removed, or appealed to a different court; (b) any action to collect, assert, protect, or realize upon or obtain possession of funds from Your Account in any bankruptcy proceeding; (c) any action insofar as it seeks provisional or ancillary remedies in connection with any of the forgoing; and (d) any dispute concerning the validity and effect of Section 11 hereof.

(Terms and Conditions at 18.) A plain reading of this language demonstrates that the exception to the definition of a Claim applies only to actions brought in small claims court or certain actions in a bankruptcy proceeding. This case falls into neither category, and Plaintiff's claim is not excepted from arbitration for this reason, either.

## *CONCLUSION*

For the reasons stated above, TCF's motion to stay further proceedings and to compel (11-1,-2) arbitration is granted.

N.D.Ill.,2007.
Pivoris v. TCF Financial Corp.
Slip Copy, 2007 WL 4355040 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.